KENNETH I. GROSS, ESQ. #117838
LAW OFFICES OF KENNETH I. GROSS & ASSOCIATES
849 South Broadway, Suite 504
Los Angeles, California 90014-3232
(213) 627-0218 (Tel.)
(213) 623-4628 (Fax)
kgross@kigrosslaw.com

Attorneys for plaintiff: MMAS RESEARCH, LLC; and DR. DONALD E. MORISKY

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| MMAS RESEARCH, LLC, a Washington Limited Liability Company; and DR. DONALD E. MORISKY,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>THE CHARITE; ANIKA STEINER; DR. ELISABETH THEISSEN and DOES 1-50, inclusive<br><br>　　　　Defendants. | Case No.: 2:21-cv-01406<br><br>COMPLAINT FOR:<br><br>1. Breach of Contract<br>2. Unfair Competition [Business and Professions Code §17200, et seq.<br>3. Copyright Infringement<br><br>DEMAND FOR JURY TRIAL |

**COMES NOW** Plaintiffs and allege as follows:

1. Plaintiff MMAS RESEARCH, LLC (MMAS) is a Washington, LLC in good standing which conducts business in Los Angeles County.

2. Plaintiff DR. DONALD E. MORISKY (Morisky) is the owner of a Copyright Registration for the "Morisky Medication Adherence Scale (4-item)" ("Morisky

COMPLAINT

MMAS-4 Copyright") (Registration No. TX0008285390, Registration date June 12, 2016), and is also the owner of a Copyright Registration for the "Morisky Medication Adherence Scale (8-item)" ("Morisky MMAS-8 Copyright") (Registration No. TX0008632533, Registration date September 21, 2018).

3. Plaintiff MMAS is the owner of a Copyright Registration for the "MMAS RESEARCH WIDGET CODE, (Registration No.TX 8-816-517, Registration date December 3, 2019, which is used in the Morisky Widget, as discussed below.

4. Collectively the copyrights described above may be referenced herein as the "copyrights".

5. Defendant THE CHARITE (Charite) is a university hospital located in Berlin Germany, which has entered into a license agreements with Plaintiffs. The license agreements which are the subject of this action provide for jurisdiction in Los Angeles County for any dispute arising from the agreement between the parties.

6. Plaintiffs are informed and believe and based thereon allege that Defendant ANIKA STEINERT, at all times relevant was an employee or agent working for or on behalf of Defendant Charite at all times described herein.

7. Plaintiffs are informed and believe and based thereon allege that Defendant DR. ELISABETH THEISSEN, at all times relevant was an employee or agent working for or on behalf of Defendant Charite at all times described herein.

8. This action arises, in part, under the Copyright Act of 1976, 17 U.S.C. §§101 et. seq., and the Lanham Trademark Act of 1946, 15 U.S.C. § 1051, et seq., conferring Federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction on Plaintiffs' state law claims under 28 U.S.C. §1367.

9. The true names and capacities, whether individual, corporate, associate or

COMPLAINT

otherwise, of defendants DOES 1-50, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs are informed and believe and based thereon allege, that each of the Defendants herein designated as a DOE, is responsible in some manner for the events and happenings herein referred to, and caused injuries and damages proximately thereby.  Plaintiffs will amend this complaint and insert the true names and capacities of said DOE Defendants when the same has been ascertained.

10. Plaintiffs are informed and believe and based thereon alleges, that each of the Defendants is responsible in some manner for the events and happenings herein referred to, and caused injuries and damages proximately thereby.

11. Plaintiffs are informed and believe, and based thereon alleges, that each of the Defendants was the agent, the partner, and/or the employee of each of its co-Defendants and in doing the things alleged, was acting within the course and scope of such agency, partnership, and/or employment.

## GENERAL ALLEGATIONS

12. Plaintiff MMAS licenses, and since January, 2017 has licensed, use of the Morisky Widget, an electronic diagnostic assessment protocol to measure and identify medication adherence behaviors (the "Widget").  The Widget includes an electronic derivative of the Morisky Medication Adherence Scales (MMAS) that must be administered, scored and reported in the Widget by individuals/entities who are licensees and are trained and certified on the correct use of the Widget.

13. The Morisky Widget diagnostic assessment results are used clinically in chronic care management programs and medication reconciliation protocols to

COMPLAINT

perform clinically effective interventions to optimize treatment adherence, Modifications of the Morisky Widget scoring and coding, as well as disclosure of scoring and coding criteria and language translations of the Morisky Widget are not permitted unless authorized by the licensor. Reasonable efforts are taken by Plaintiff to protect and not to disseminate the Morisky Widget Diagnostic Assessment or Translated Versions to non authorized users, as well as the scoring and coding.  Prior to 2017, individual licenses to the MMAS-4 and MMAS-8 were granted and sold by Plaintiff, Dr. Morisky.

14. Perpetual Morisky Widget Licenses are often provided at no cost for developing countries and health organizations that provide care for medically underserved populations. All "Morisky Widget" licensees must pay the costs for travel, and 8 hours of face to face training and certification for the correct use of the Morisky Widget, and there is a charge for each test administered by a licensee, in addition to those included in the cost of the license. If any additional member of licensed organization wishes to use a Widget license, they must participate in training and certification before they administer Morisky Widget assessments to patients.

15. Plaintiffs takes reasonable efforts to protect and not to disseminate the MMAS-4 and the MMAS-8 or Translated Versions, and the MMAS Widget Code to non authorized users, as well as efforts to make sure the scoring and coding is not disclosed.

16. These restrictions by Plaintiffs described herein not only protect their federally registered rights, but also protect patients and health care providers from counterfeit or scientifically incorrect diagnostic assessments and inaccurate results.

COMPLAINT

**GENERAL STATEMENT OF FACTS**

17. On or about early June, 2017 Defendants Charite had three licenses from Dr. Morisky to use the MMAS 4 and/or the MMAS-8 which were expiring, yet the studies they were issued for were not complete. By this time, individual licenses for the MMAS-4 and MMAS-8 were no longer offered, and had been replaced by licenses for the Morisky Widget. Following negotiations between the parties, and as a means to be able to continue their studies being conducted with the expiring licenses, Defendants Charite and DOES 1-20 were offered a Morisky Widget license for $4,000. On or about June 25, 2017 Plaintiff MMAS and Defendants Charite and DOES 1-20 entered in to the Morisky Widget license attached hereto and incorporated herein as Exhibit A. At this time, it was represented by Defendant Charite, and understood by Plaintiffs, that the only use being made of the MMAS was with regard to the studies which were the subject of the three expiring licenses described herein.

18. Shortly thereafter, representatives of MMAS traveled to Berlin to train the personnel of Defendant Charite who were going to use the Morisky Widget per the terms of Exhibit A.

19. Unknown to Plaintiffs at this time, Defendant Anika Steinert and DOES 1-10, on behalf of, and as an agent of Defendants Charite and DOES 1-20 had conducted a study and participated in a presentation using the MMAS-8 the purpose of assisting with the development and validation of a phone app known as MyTherapy. There was no license or other permission to use the MMAS-8 for this use. Also, unknown to Plaintiffs at the time they entered into Exhibit A and at the time they traveled to Berlin for training and certification, Defendant Prof. Dr.

COMPLAINT

Elisabeth Thiessen of Charite and DOES 1-10 had also conducted a study using the MMAS-8 which she used to promote the MyTherapy phone app described herein, and appeared in an advertisement for the phone app describing her use of the MMAS-8 for MyTherapy.

20. Plaintiffs are informed and believe and based thereon allege that at the time of entering into Exhibit A, Defendants Charite, Anika Steinert; Prof. Dr. Elisabeth Theissin, and DOES 1-20 were working on the commercial development of the MyTherapy phone app using the MMAS for which they were being paid, which they were not authorized to use.

21. While representatives of Plaintiff MMAS were in Berlin providing training to Defendant Charite pursuant to Exhibit A, they were approached by another Charite researcher, Dr. Fabian Halleck, who advised he had been using the MMAS-8 and had administered 888 tests with regard to a study involving kidney transplant patients (the "Halleck Study"). He requested a retroactive license, and this request was granted. On or about September 2, 2017 a retroactive license was entered into to authorize the Halleck Study for a cost of seven thousand euros (€7000) and the requirement that all MMAS tests administered in the Halleck Study, be rescored in the Morisky Widget, so as to assure accuracy. A copy of the Addendum for the Halleck Study is attached hereto and incorporated herein as Exhibit B.

22. The MMAS tests from the Halleck Study were never rescored in the Morisky Widget and the article prepared as a result of the Study was published in 2018. Also, unknown at the time of granting the Morisky Widget license (Exhibit A),

COMPLAINT

Defendants Charite, researcher Halleck, and others as described herein, had been working to develop a commercial phone application, "My Therapy", making use of the MMAS-8 without license or authority.

23. Several months after this described training in Berlin, it was discovered that Defendant Charite had sponsored another study, by their researcher, Dr. Andreas Meisel that had used the MMAS-8, known as *Managing Aftercare Stroke (MAS): MAS II- A Longitudinal Complex-Interventional Study in Post Rehabilitation Stroke Patients* (the Meisel Study). Had they known this fact, or had it been disclosed, Plaintiff MMAS would have charged more money for the June 25, 2017 Morisky Widget License.

## FIRST CAUSE OF ACTION FOR
## BREACH OF CONTRACT (The Meisel Study)

(by Plaintiff MMAS against all Defendants)

24. Plaintiff realleges paragraphs 1-23 of the Complaint and incorporates them by this reference as though fully set forth herein.

25. On or about June 25, 2017 defendant Charite and DOES 1-20, and Plaintiff MMAS entered into a written License Agreement, for use of the Widget as discussed above, and attached as Exhibit A.

26. Exhibit A provides that it was entered into for specific research studies as a result of expiring licenses for the MMAS-8, and provided that Charite could provide sublicenses to others to conduct studies on their behalf, but said sub licensees could not use the tool unless they first received, for a fee, training and

COMPLAINT

certification on use of the tool, as all users are required to receive. At the time of entering into the Agreement, the only use of the MMAS-8 permitted, was with a license for the Widget.

27. Paragraph II Terms of Use, subparagraph H. provides that that jurisdiction for any disputes arising under the Agreement shall be the courts of Los Angeles, California.

28. Following negotiation and execution of Exhibit A, it was discovered that Andrea Mesisel of Charite, had made unauthorized and unlicensed use of the MMAS-8 in the Meisel Study.

29. Defendants Charite and DOES 1-20 have breached Exhibit A by failing and refusing to enter into a sub license to cure the unauthorized use of the MMAS-8 and by failing to have Dr. Meisel undergo training and certification in the Morisky Widget, as was required for all uses of the MMAS-4 or MMAS-8 per Exhibit A.

30. Paragraph II Terms of Use, subparagraph H. provides that that jurisdiction for any disputes arising under the Agreement shall be Los Angeles County, California.

31. As a result of the breach of Defendants as described herein, Plaintiff has been damaged, including to its reputation and the integrity of the MMAS-8, and Morisky Widget, in a sum according to proof.

32. As a further direct and proximate result of the breach of Defendants as described herein, Plaintiff has incurred costs for professionals, including attorneys, and incurred other incidental expenses and costs, all in a sum according to proof.

COMPLAINT

## SECOND CAUSE OF ACTION

## FOR BREACH OF CONTRACT (The Halleck Study)

**[Civil Code §3426.1, et seq.]**

(by Plaintiff MMAS against all Defendants)

33. Plaintiff realleges paragraphs 1-32 of the complaint and incorporates them by this reference as though full set forth herein.

34. The Addendum attached as Exhibit B arose as a result of the unauthorized use of 888 MMAS-8 tests by Defendant Charite and their researcher and agent, Dr. Fabian Halleck.

35. An express term of Exhibit C, is that the 888 MMAS tests administered by Halleck, be rescored in the Morisky Widget. Defendants have failed and refused to rescore the tests as agreed.

36. Plaintiff is informed and believes and based thereon alleges that the refusal to rescore the tests in the Morisky Widget is due to the work already done by Defendants Charite and DOES 1-20, and Fabian Halleck with regard to commercial development of the MyTherapy phone app, and the concern that scoring the tests administered in the Morisky Widget, as required, may yield different results, than those reported to developers of the phone app.

37. As a result of the breach of Defendants as described herein, Plaintiff has been damaged, including to its reputation and the integrity of the MMAS-8, and Morisky Widget, in a sum according to proof.

38. As a further direct and proximate result of the breach of Defendants as described herein, Plaintiff has incurred costs for professionals, including attorneys, and incurred other incidental expenses and costs, all in a sum

COMPLAINT

according to proof.

## THIRD CAUSE OF ACTION FOR

## COPYRIGHT INFRINGEMENT [17 U.S.C. §101 et seq.}

(Against all Defendants)

39. Plaintiff realleges paragraphs 1-38 of the complaint and incorporates them by this reference as though fully set forth herein.

40. At all times relevant hereto, Plaintiffs have been the owner of all copyright rights or rights to assert copyright claims for the copyrights described herein. Plaintiffs have complied in all respects with the Copyright Act of 1976, 17 U.S.C. §101 *et seq.*, and all other laws governing copyrights.

41. When Plaintiffs entered into Exhibit A they were only aware of the uses of the MMAS copyrighted works which are the subject of that license. The license was designed to allow studies conducted pursuant to expiring licenses, to continue, and to allow Defendant Charite to issue sublicenses provided, the users were trained and certified, and a fee for the training and certification was paid.

42. Plaintiff is informed and believes that for some time prior to execution of Exhibit A, Defendants Charite, Steinert, Theissen, and DOES 10-20, as well as Dr. Halleck, were using the MMAS-8 for development and/or testing of the phone app described herein.

43. This use described with regard to the phone app or any use not included in Exhibit A was not authorized and infringed on the Copyrights held by Plaintiffs. Plaintiff is informed and believes and based thereon alleges that this use with regard to the phone app continued after execution of Exhibit A.

44. Section 5 of Exhibit A prohibited the transfer of this intellectual property,

COMPLAINT

as did the prior licenses for the MMAS executed by Defendant Charite.

45. Studies done by Defendants were for their financial benefit and for the benefit of MyTherapy, all without the knowledge and consent or authorization from the Plaintiff.

46. Plaintiffs are informed and believe and thereon alleges that Defendants without authorization, have infringed and will continue to infringe the copyrightsby using, copying, counterfeiting, distributing, or otherwise exploiting same without a license to do so.

47. Plaintiffs are entitled to an injunction restraining Defendants, and each of them, and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

48. As a direct result of Defendants' infringement, Plaintiffs have sustained damages in an amount to be determined at trial.

49. Pursuant to 17 U.S.C. §§ 502, 503, 504, and 505, Plaintiffs are entitled to an award of actual or statutory damages, injunctive relief, the impoundment and destruction of the infringing materials, and their attorney's fees and costs.

50. Plaintiffs are also entitled to damages, pursuant to the Copyright Act of 1976, 17 U.S.C. §§101. *et. seq*., for Defendants' willful and continued infringements of the copyrights.

## FOURTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES [B&P §17200, et seq]
### (against all defendants)

51. Plaintiffs reallege paragraphs 1-50 of the complaint and incorporate them by this reference as though fully set forth herein.

COMPLAINT

52. Defendants' acts and practices as detailed above constitute acts of unlawful, unfair or fraudulent business acts and practices within the meaning of California Business and Professions Code §17200.

53. Pursuant to California Business and Professions Code §17203, Plaintiffs seek an order from this Court prohibiting defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth herein.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. For compensatory damages in an amount to be proven at trial according to proof;

2. For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from:

    a. Using the Morisky Widget (the tool) or the MMAS-4 or MMAS-8, until the breaches and infringements identified herein have been remedied;

    b. Granting any sublicenses to use the tool

    c. assisting, aiding, or abetting any other person or business in engaging in or performing any of the above activities;

3. Order that Defendants file with this Court and serve upon Plaintiffs within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have

COMPLAINT

complied with the injunction, as well as the steps they have taken to comply;

    4. For statutory damages for copyright infringement;

    5. For costs of suit herein incurred;

    6. For profits of the Defendants earned through the unauthorized use of the Morisky Widget, MMAS-4 or MMAS-8

    7. For attorney fees;

    8. For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

    9. For such other and further relief the Court deems just and proper.

Dated: February 16, 2021              Kenneth I. Gross & Assoc.

By   S/ Kenneth I. Gross
      Kenneth I. Gross, Esq.
      Attorneys for Plaintiffs

## DEMAND FOR A TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all Causes of Action in the Complaint so triable.

                          Kenneth I. Gross & Assoc.

by   S/ Kenneth I. Gross
      Kenneth I. Gross, Esq.
      Attorneys for Plaintiffs

COMPLAINT